ROBERT S. JORDAN vs. ROBERT SINSHEIMER.

Norfolk. October 5, 1988. — December 14, 1988.

Present: HENNESSEY, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*District Attorney. Civil Rights*, Immunity of public official.

In an action seeking injunctive relief and damages under the State and Federal civil rights acts for the failure of the defendant, while an assistant district attorney, to comply with an explicit court order to return certain items seized during a police search of the plaintiff's home, it was held that the defendant's conduct, as presented on the record of summary judgment proceedings, involved no exercise of discretion that would entitle him to either absolute or qualified immunity from civil liability. [588-590]

CIVIL ACTION commenced in the Superior Court Department on January 2, 1986.

A motion for summary judgment was heard by *Katherine Liacos Izzo*, J.

Leave to prosecute an interlocutory appeal was granted in the Appeals Court by *Frederick L. Brown*, J. The Supreme Judicial Court transferred the case on its own initiative.

*Marc C. Laredo*, Assistant Attorney General, for the defendant.

*Michael Avery (Marjorie Heins* with him) for the plaintiff.

WILKINS, J. We are presented with the question whether a prosecutor is entitled to either absolute or qualified immunity from liability for the alleged harm to the plaintiff (Jordan) arising from the prosecutor's failure to return to Jordan seventeen videotapes as ordered by a judge of the Superior Court.

On November 4, 1982, members of the Plymouth police department searched Jordan's home pursuant to a search warrant. They seized drugs, drug paraphernalia, and other contraband (see *Commonwealth* v. *Jordan [No. 2]*, 397 Mass. 494, 495 [1986]), as well as seventeen videotapes, the latter

of which they delivered to the district attorney's office. The plaintiff was indicted on November 9, 1982, for assault and battery by means of a dangerous weapon and kidnapping. He was found guilty of those crimes and his convictions were affirmed. See *Commonwealth* v. *Jordan (No. 1)*, 397 Mass. 489 (1986). He was also separately charged with three drug offenses, and the denial of his motion to suppress certain evidence seized in the search of his home was affirmed by this court. See *Commonwealth* v. *Jordan (No. 2), supra*.

In deciding the motion to suppress, the Superior Court judge considered Jordan's request that the videotapes be returned to him. The Commonwealth did not seriously oppose the request but represented to the judge that the tapes showed the use of cocaine and perhaps other criminal activity and that they also showed private sexual activity (with the victim of the assault and battery and kidnapping) that met the legal definition of obscenity. On May 20, 1983, the judge ordered the prosecution to retain the tapes for 120 days during which time the victim could assert rights in the tapes. If she did not (and she did not), he ordered that "the Commonwealth shall return the tapes to [Jordan]."

The defendant, then an assistant district attorney, was assigned the prosecution of the various charges against Jordan. The defendant advised Jordan's counsel that he would not return the tapes while Jordan was incarcerated. He left the district attorney's office in September, 1984.

In January, 1986, Jordan commenced this action seeking return of the tapes and monetary damages.[1] The complaint alleges that the defendant violated his right to property because the defendant failed to comply with the court order, that the defendant violated Jordan's rights under G. L. c. 12, §§ 11H and 11I (1986 ed.) (the State Civil Rights Act), and that he denied Jordan his civil rights under 42 U.S.C. § 1983 (1982).

The defendant moved for summary judgment on several grounds and that motion was denied. A single justice of the

---

[1] The videotapes were returned under a court order dated December 30, 1986. Jordan continues the action, seeking monetary damages.

Appeals Court allowed the defendant to have appellate review of the interlocutory order. See *CUNA Mut. Ins. Soc'y* v. *Attorney Gen.*, 380 Mass. 539, 540 (1980). We transferred the appeal here on our own motion. We affirm the order denying the defendant's motion for summary judgment.[2]

1. Although the complaint alleges violations other than violations of 42 U.S.C. § 1983, by discussing and relying solely on cases concerned with immunity under § 1983 the defendant in effect argues that the scope of absolute immunity available to him under § 1983 defines the immunity available as to all claims asserted against him. The defendant makes no argument that his immunity under the State Civil Rights Act or under the common law is broader than it is under § 1983.[3] We deal with the defendant's appeal as he presents it.

The question of the availability of § 1983 immunity is one of Federal law. In *Chicopee Lions Club* v. *District Attorney for the Hampden Dist.*, 396 Mass. 244, 248 (1985), we said that *Imbler* v. *Pachtman*, 424 U.S. 409, 430 (1976), required us to focus on the nature of the official behavior challenged (the functional nature of the activities) rather than solely on the defendant's status or position. That the functional test is the appropriate one under Federal law has since been made even clearer. See *Forrester* v. *White*, 484 U.S. 219, 224 (1988) ("Under [the functional] approach, we examine the nature of the functions with which a particular official or class of officials has

---

[2] The defendant does not argue here that he was entitled to summary judgment on any theory other than immunity, absolute or qualified. We note, however, that, in the absence of new record material from the plaintiff bearing on the allegation that the defendant used the videotapes for improper purposes, the defendant will be entitled to partial summary judgment on those counts that allege misuse of the tapes. See Mass. R. Civ. P. 56 (d), 365 Mass. 824 (1974).

[3] The defendant's concession relates to an issue that we recently left open and that he does not address in his brief. See *Chicopee Lions Club* v. *District Attorney for the Hampden Dist.*, 396 Mass. 244, 251-252 (1985). The question would be whether the State common law "performance of official duties" immunity provides immunity in the circumstances of this case as to claims based on State law theories. *Id.* at 252. One question would be whether performance of official duties immunity should be applied to allegedly wrongful prosecutorial conduct that, as will be seen, did not involve the exercise of even the slightest discretion.

been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions").

We have said, in reliance on the *Imbler* case, *supra* at 424-425, that absolute immunity is extended to a prosecutor as to § 1983 claims in order to protect the discretionary decision making undertaken within the ambit of the prosecutor's official duties. *Chicopee Lions Club, supra* at 250-251. Cf. *Westfall* v. *Erwin*, 484 U.S. 292, 297-300 (1988) (absolute immunity of Federal officials from State law tort actions is available only when their conduct is within the scope of their official duties and it involves the exercise of sufficient discretion to warrant the shield of immunity).

The defendant in this case had no discretion to exercise concerning the return of the tapes. A judge had ordered that the tapes should be returned. The defendant was not confronted with any dilemma and, if he thought he was, he should have appealed from the order or sought to change it. Even if he thought that Jordan should not or could not receive the tapes while incarcerated, it was not within his discretion to retain them.[4] An obligation to carry out a clear court order involves no exercise of discretion. Cf. *A.L.* v. *Commonwealth*, 402 Mass. 234, 245-246 (1988) (no exemption from liability under State tort claims act's "discretionary function" exemption for employee's failure to ascertain whether probationer had complied with a judicial order concerning probation). "Because it would not further effective governance, absolute immunity for nondiscretionary functions finds no support in the traditional justification for official immunity." *Westfall* v. *Erwin, supra* at 297. The defendant was not entitled to summary judgment on the basis that he was absolutely immune from liability.

---

[4] The regulations of the Department of Correction concerning a prisoner's right of access to material that contains "[g]raphic presentations of sexual behavior that are in violation of law" state that the superintendent of the institution has discretion to deny receipt of them by the prisoner. 103 Code Mass. Regs. § 481.15 (1987). The regulations of the institution in which Jordan was imprisoned indicate that its superintendent could have allowed long-term storage of the tapes.

2. The defendant asserts that at least qualified immunity is available to him because his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). One issue is whether on clearly established principles of law, he could have reasonably believed his acts to be lawful. *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield,* 401 Mass. 26, 32 (1987). Here, too, the person seeking immunity must be performing discretionary functions. *Harlow* v. *Fitzgerald, supra* at 816. See *Breault, supra* at 33. The court order clearly established the defendant's duties concerning the return of the tapes and, on the record, it cannot be said as a matter of law that a "reasonably competent public official," *Harlow, supra* at 819, would not know the significance of that order. In any event, the defendant was not performing a discretionary function. The defendant was not entitled to summary judgment on the ground that he had qualified immunity.[5]

This opinion should cause prosecutors no concern that they may be successfully sued by criminal defendants for their conduct in the handling of criminal cases. The seventeen videotapes had been suppressed by court order. A judge had ordered their return. This case thus concerns the alleged failure to adhere to a clear court order. Not one element of prosecutorial discretion was involved on the record in this case. What a trial may disclose is, of course, another matter.

We also comment on the rather trifling nature of the claim made in this case, a claim for damages for the denial to the plaintiff for one year, while incarcerated, of control over seventeen videotapes allegedly depicting criminal activity and sexual conduct in which he had engaged. It is not clear that Jordan would have been given the tapes while he was imprisoned or that, if he had had them, he would have had access to facilities for viewing them. We see no evidence on the record of "threats, intimidation or coercion" by the defendant in retaining the

---

[5] The defendant does not argue for broader qualified immunity as to claims based on State law than is available under § 1983, and we do not consider the point. See note 3, *supra.* See also *Breault, supra* at 38.

tapes that would warrant recovery under the State Civil Rights Act. G. L. c. 12, § 11H. We wonder whether § 1983 appropriately applies to what amounts at most to a temporary conversion of property of little value.

In any event, we are presented only with immunity questions, and, on those, the appropriate conclusion is that the order denying the defendant's motion for summary judgment is affirmed.

*So ordered.*